1

2

3

4

5

6

7                           **UNITED STATES DISTRICT COURT**

8                            **EASTERN DISTRICT OF CALIFORNIA**

9

10

11   SHARON ANN WRIGHT,                    )   Case No.: 1:19-cv-00721-BAM
                                           )
12                    Plaintiff,           )   **ORDER REGARDING PLAINTIFF'S**
                                           )   **SOCIAL SECURITY COMPLAINT**
13           v.                            )
                                           )
14   ANDREW M. SAUL, Commissioner of Social )
     Security,                             )
15                                         )
                                           )
16                    Defendant.           )
     _____ )

17

18                                **INTRODUCTION**

19           Plaintiff Sharon Ann Wright ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying her applications for disability insurance

21   benefits under Title II of the Social Security Act and supplemental security income under Title XVI of

22   the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were

23   submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

24           Having considered the briefing and record in this matter, the Court finds the decision of the

25   Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

26

27   _____

28   [1]       The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including
     entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 7, 8, 22.)

                                               1

and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 20, 2015.  AR 223-25.[2]  Plaintiff alleged that she became disabled on June 15, 2009, due to depression, anxiety, chronic pain and an ulcer in her left knee.  AR 301.  Plaintiff's applications were denied initially and on reconsideration.  AR 142-45, 147-51, 158-63.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ John Trunick held a hearing on February 13, 2018, and issued an order denying benefits on April 26, 2018.  AR 12-28, 34-80.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on February 13, 2018, in Fresno, California.  Plaintiff appeared with her attorney, Sengtheine Bosavahn.  Connie Guillory, an impartial vocational expert, also appeared.  AR 36.

Plaintiff testified that she graduated from high school and attended training as a dental assistant.  She can read, write and converse in English.  AR 42-43.  She worked as a food and beverage supervisor at a casino during 2003, 2004 and 2005.  AR 44-45.  She supervised 20-25 people during a shift, which included cooks, waitresses, servers, and room service.  She had management responsibilities, including the authority to hire, fire and schedule employees.  AR 45-46.  In 2006 and 2007, she worked as a food server/waitress and bartender.  AR 47-49.  After that, she worked as a food server and bartender.  AR 49.  Her last job was as a bartender.  AR 51.  Plaintiff confirmed that she last worked on June 15, 2009, but her alleged disability began on April 6, 2009.  She tried to keep working after her alleged onset date, but she was unable to do light duty assignments.  AR 51-52.  The vocational expert ("VE"), Connie Guillory, classified Plaintiff's past work as waitress, bartender, food service supervisor, and food service manager.  AR 50-51.

---

[2]         References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about her left knee, Plaintiff confirmed that after her left knee replacement surgery she returned for a second manipulative surgery to break up scar tissue and to acquire full range of motion.  The operative report indicated that they were able to achieve up to 125 degrees range of motion bending the knee back.  Plaintiff testified, however, that it did not stay that way.  AR 52-53.

When asked about her plantar fasciitis, Plaintiff reported that it had been occurring for about a year.  She wears a brace at night on her left foot.  AR 54.

When asked about her right knee, Plaintiff testified that it was worse than her left knee.  She reported that they now want to do surgery on both of her knees, total replacements.  AR 55.

When asked about her mental and physical issues, Plaintiff testified that she has anxiety, depression, chronic pain syndrome, left knee status post total knee arthroscopy, hypertension, plantar fasciitis, left, right knee osteoarthritis and non-severe hypothyroid.  AR 55.

Plaintiff also testified that she uses a cane.  She also has braces on both of her knees with metal hinges on the sides, which were provided by the doctor.  She wears them daily, all day long.  She also uses the cane all the time.  AR 56-57.

When asked about her alleged disability onset date, Plaintiff reported that she was in a car accident around that time.  She believes that she is unable to work because she cannot sit or stand for long in the same position comfortably.  If she cannot elevate her feet several times a day, then her feet swell, causing her to stumble and trip.  Plaintiff believed this was because of her knees.  She also believed that she had a botched surgery, requiring her other knee to overcompensate.  She has pain every day in both knees, along with sharp, shooting pains in her lower back down to her ankles.  She takes Norco, muscle relaxers, because she has spasms in her legs.  AR 57-58.

When asked about her daily activities, Plaintiff reported that she does light cooking and light cleaning.  She is able to shower and dress herself.  She can prepare and take her own medicine and prepare and eat her own meals.  She does not walk to the mail or take out the garbage because it is a long walk.  She can make her own bed, do dishes and laundry, but cannot vacuum.  She has to elevate her legs every half hour by reclining in a chair.  She does not get out much and does not go to group meetings or church because of pain.  She has a driver's license and is able to drive.  She probably spends half of her day on electronic devices, like the TV, tablet or telephone.  She watches half-hour

3

sitcoms. Her family takes her grocery shopping once or twice a week and Plaintiff uses an electric cart. AR 59-63.

When asked about her abilities, Plaintiff testified that she can lift about half a gallon of milk. She can walk about five minutes and for about half a block. On a typical day, she will wake up, shower, eat breakfast and then elevate her legs. She will then get up and do her laundry and her breakfast dishes. She also will try to do a puzzle. She again will elevate her legs, eat lunch and then do her dishes. AR 63-65. Plaintiff reported that her pain medications may knock her out for 10 or 15 minutes, but she has no other side effects from medication. AR 65. She is not receiving mental health treatment. AR 71.

In response to questions from her attorney, Plaintiff clarified that during the day she elevates her legs because of swelling in her knees. When doing chores, she will lean against the counter while doing dishes, lean against the washing machine and fold clothes while sitting down. She will stop her chores after 10 or 15 minutes because of pain and will take a 30-minute break. She will doze off two or three times a day for 15 or 20 minutes. Plaintiff also clarified that she tries to shower when she first wakes up because if she does not get in the shower right away, her legs are too swollen, and she cannot lift them high enough to get over the bathtub to get in the shower. Plaintiff reported that most of the time she cannot drive, cannot walk and cannot lift anything. AR 65-70.

Following Plaintiff's testimony, the ALJ elicited testimony from VE. For all of the hypotheticals, the ALJ asked the VE to consider a hypothetical person with the same age, education and work experience as Plaintiff. For the first hypothetical, the ALJ asked the VE to assume an individual at the light exertional capacity with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk up to six hours per eight-hour day and sit up to six hours per eight-hour day with only occasional pushing and pulling with the bilateral lower extremities. This person could never climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The VE testified that such a person would be able perform all of Plaintiff's prior work as generally performed. There also would be other jobs in the national economy for such a person, such as fast food manager, food checker with transferable skills, and hostess, all with transferable skills from her previous positions. AR 71-73.

4

For the second hypothetical, the ALJ asked the VE to assume a person with less than light level exertional capacity with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk up to four hours per eight-hour day, and sit up to six hours per eight-hour day, with only occasional pushing and pulling with the bilateral lower extremities, never climbing ropes, ladders or scaffolds and only occasionally climbing ramps and stairs or balancing stooping, kneeling, crouching, and crawling.  The VE testified that there would be no prior work, but the food checker position would remain available at the sedentary level.  The VE identified that there would be other work available, such as hand packer with 25% erosion and sub assembler with 25% erosion.  AR 73-75.

For the third hypothetical, the ALJ asked the VE to assume a sedentary exertional capacity with the ability to lift and carry up to ten pounds occasionally, stand and walk up to two hours per eight-hour day and sit up to six hours per eight-hour day with only occasional pushing and pulling with the bilateral lower extremities, never climbing ladders, ropes or scaffolds, and only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling.  The VE testified that there would be no prior work available, but the food checker position would remain.  There would also be unskilled sedentary positions, such as inspector and electrical assembler.  AR 75-76.

For the fourth hypothetical, the ALJ asked the VE to add that the worker would be able use a cane for all ambulation and for standing.  The VE testified that the sedentary jobs would remain, such as food checker, inspector and electrical assembler.  AR 76.

For the fifth hypothetical, the ALJ asked the VE to add that the sedentary person with the limitations given, including the use of the case, would be allowed to elevate their feet on and off for 15 minutes at a time once each hour and remain on task.  The VE testified that the sedentary positions would remain available.  AR 76.

For the sixth hypothetical, the ALJ asked the VE to add that the individual would be allowed up to two additional breaks of 10 to 15 minutes each in addition to the standard breaks.  The VE testified there would be no available jobs long term.  AR 77.

For the seventh hypothetical, Plaintiff's attorney asked the VE to add to the light hypotheticals that the person would need to use a cane when standing or walking.  The VE testified that this would

5

affect jobs at the light level and the use of the cane would move the exertional level to sedentary.  AR 77.

For the eighth hypothetical, Plaintiff's attorney asked the VE to add to the light hypotheticals that the person would need to change positions between sitting and standing every 30 minutes, alternating standing for 5 minutes, sitting for 30 minutes, standing for 5 minutes and sitting for 30 minutes.  The VE testified that the light positions would not remain available.  AR 78.

For the ninth hypothetical, Plaintiff's attorney asked the VE to add to the fifth hypothetical that the person would need to elevate above the hip level.  The VE testified that, at the sedentary level, if the leg is lifted above hip level, then it is difficult for the person to stay on task.  AR 78.  The VE reported that there would be no available positions.  AR 79.

For the tenth hypothetical, Plaintiff's attorney asked the VE to consider a person that would be off task for 20% of the workday.  The VE testified that such a person would not be able to sustain competitive employment.  AR 78.

For the last hypothetical, Plaintiff's attorney asked the VE to consider a person that would miss two days of work per month due to medical problems.  The VE testified that such a person would not be able to sustain competitive employment over time.  AR 79.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-28.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2009, her alleged onset date.  AR 18.  The ALJ identified chronic pain syndrome, left knee status post-total knee arthroscopy, left foot plantar fasciitis, right knee osteoarthritis, and hypertension as severe impairments.  AR 18-20.  The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 20-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. She was limited to occasional pushing and pulling with the bilateral lower extremities, never climbing ladders, ropes or scaffolds, occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and/or crawling. She also must be allowed the use of a cane for all ambulation and standing and must be allowed to elevate her feet on and off for 15 minutes at a time each hour while remaining on task. AR 21-26. With this RFC, the ALJ found that Plaintiff could not perform her past relevant work, but she could perform other jobs in the national economy, such as food checker. AR 26-27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

7

1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred by (1) improperly rejecting the opinion of her treating physician, Dr. Daniel L. Schaffner; (2) improperly rejecting the opinion of the examining physician, Dr. Rush; (3) improperly evaluating Plaintiff's testimony; (4) finding that Plaintiff's mental impairment was not severe at step two of the sequential evaluation; and (5) improperly discounting lay witness testimony from Plaintiff's sister.  (Doc. No. 19 at 15.)

**A.  The ALJ Did Not Commit Reversible Error in Evaluating Opinion Evidence from Dr. Schaffner.**

Plaintiff first contends that the ALJ committed reversible error by failing to provide specific and legitimate reasons for rejecting the opinion of her treating physician, Dr. Schaffner.

On January 22, 2018, Dr. Schaffner completed a Questionnaire.  He opined that Plaintiff was not able to work until knee surgeries were done, with a right total knee replacement and a left redo, based on examination of Plaintiff's knees and clinical findings.  He identified knee and leg pain as Plaintiff's primary impairments.  He further opined that Plaintiff could lift and carry about 4 pounds, could sit 15 minutes at one time, stand briefly and walk 10-15 minutes at a time.  Over an 8-hour period, Plaintiff could sit 2 hours with movement, stand briefly and walk 1-2 hours.  Dr. Schaffner also indicated that Plaintiff would need to be supine, elevate her legs and use cool packs for the remainder of the day.  AR 842.

---

[3]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this instance, Dr. Schaffner's treating opinion was contradicted by the opinions of multiple physicians, including: (1) Dr. Tomas Rios, a consultative examiner, who opined on October 27, 2015, that Plaintiff could stand up to six hours, walk up to six hours, sit without limitation, lift and carry 20 pounds occasionally, 10 pounds frequently, could occasionally climb steps, stairs, ladders, scaffolds, and ropes and could frequently stop, crouch, kneel and crawl (AR 832); (2) Dr. G. Bugg, a state agency medical consultant, who opined on November 16, 2015, that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, lift and/or carry 20 pounds occasionally, 10 pounds frequently, and could occasionally climb ramps, stairs, ladders, ropes and scaffolds, could frequently balance, stoop, and kneel, and could occasionally crouch and crawl (AR 91-92, 105-06); (3) Dr. H. M. Estrin, a state agency medical consultant, who opined on March 9, 2016, that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, lift and/or carry 20 pounds occasionally, 10 pounds frequently, was limited in pushing and/or pulling in her left lower extremities, could occasionally climb ramps/stairs, but never climb ladders, ropes or scaffolds, could occasionally balance, kneel, crouch and crawl and could frequently stoop. (AR 119-21, 132-34); and (4) Dr. Samuel B. Rush, a consultative examiner, who opined on October 2, 2017, that Plaintiff could walk and stand for four hours with rest periods, sit

without restriction, push, pull, lift and carry 20 pounds occasionally, 10 pounds frequently, could

occasionally bend, could never kneel on the left, could never stoop, crawl, or crouch, and should not

walk on uneven terrain (AR 841).  In light of these opinions, the ALJ was required to provide specific

and legitimate reasons supported by substantial evidence in the record to reject Dr. Schaffner's

opinion.

In evaluating Dr. Schaffner's opinion, the ALJ reasoned as follows:

> The undersigned gives little weight to Dr. Schaffner's opinions as they are inconsistent with the objective record as a whole.  As discussed above, the claimant exhibited 5/5 strength throughout the upper and lower extremities in October 2015 and 2017 (7F/8 and 8F/7).  Further, treating doctors noted the claimant demonstrated excellent range of motion following total knee arthroplasty, as she was capable of 123-degree flexion (3F/27).  These findings support a greater functional work capacity that [sic] Dr. Schaffner's limitations. For these reasons, the undersigned gives little weight to his opinions.

AR 25.

Having considered the record, the Court finds that the ALJ provided specific and legitimate

reasons supported by substantial evidence to assign little weight to Dr. Schaffner's opinion.  The ALJ

discounted Dr. Schaffner's opinion based on its inconsistency with the objective record.  AR 25.  An

ALJ may reject a treating physician's opinion that is not reflective of the clinical and diagnostic

evidence. *See Evans v. Berryhill*, 759 Fed.App'x 606, 608 (9th Cir. 2019) (finding ALJ did not err in

rejection of treating physician's opinion that "appear[ed] more reflective of the claimant's subjective

complaints and particular clinical presentation than the actual clinical and diagnostic evidence at that

time"); *Trevizo*, 871 F.3d at 675 (finding treating physician's opinion entitled to controlling weight

only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques");

*Martinez v. Berryhill*, No. EDCV 15-1563-JPR, 2017 WL 935157, at *8 (C.D. Cal. Mar. 9, 2017)

("Inconsistency with the medical record and lack of diagnostic evidence are permissible reasons for

the ALJ to give medical opinions little weight.").  Here, as the ALJ correctly identified, in October

2015, Plaintiff demonstrated full motor strength in her upper and lower extremities.  AR 25, 831.  She

also was capable of 123-degree flexion following total left knee replacement in 2011.  AR 468.

However, the ALJ mistakenly found that Plaintiff demonstrated full motor strength in October 2017.

Rather, as Plaintiff correctly notes, she demonstrated only 3/5 motor strength in her lower extremities.

AR 840.   Nonetheless, any such mistake is harmless because objective findings from the same October 2017 examination revealed that Plaintiff generally had normal range of motion, she was able to walk without difficulties and her sensory examination was unremarkable.   AR 23, 839-41.   Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Molina v. Astrue*, 674 F.3d 1101, 1115 (9th Cir. 2012) (citations omitted). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.*

Additionally, as reflected by the decision, the ALJ afforded little weight to Dr. Schaffner's opinion in favor of the opinions of the consultative examiners, Drs. Rios and Rush, by assigning their opinions partial weight.   AR 24-25.   An examining physician's opinion can constitute substantial evidence to reject a treating physician's opinion if the examining physician's opinion "rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence") (citations omitted); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinion of an examining physician may constitute substantial evidence to discount a treating physician's opinion).

As indicated above, Dr. Thomas Rios completed an independent physical examination in October 2015 and made clinical findings regarding Plaintiff's limitations that were not as extreme as those identified by Dr. Schaffner.   On physical examination, Plaintiff walked with a slight limp, but was capable of getting on and off the examining table unassisted.   AR 830.   Her station and gait were normal, and her Romberg test was negative.   AR 831.   Examination of her left knee revealed fine crepitus and tenderness of the medial and lateral compartment, but no laxity of joint.   Her motor strength was 5/5 throughout her upper and lower extremities and her knee extensors and flexors motor strength was reduced only at 4+/5.   Her grip strength was normal, and she had normal muscle bulk and tone.   AR 831-32.   Dr. Rios found that Plaintiff had residual tenderness on the left knee with some range of motion limitation and diminution of strength on the knee extensors and flexors.   He concluded, however, that she could stand up to six hours, walk up to six hours, sit without limitation, lift 20 pounds occasionally, 10 pounds frequently, could occasionally climb steps, stairs, ladders, scaffolds and ropes and could frequently stoop, crouch, kneel and crawl.   AR 832.

Additionally, Dr. Rush completed an independent physical examination in October 2017 and made clinical findings regarding Plaintiff's limitations that were not as extreme as those identified by Dr. Schaffner only few months later.  Dr. Rush observed on examination that Plaintiff was able to move about the office without assistance.  AR 838.  Her extremities showed no clubbing, cyanosis, or edema and her knee joints showed normal range of motion bilaterally.  AR 839-40.  Her motor strength was 5/5 in the upper extremities and 3/5 in the lower extremities.  She was able to walk without difficulties and she also was able to walk on toes and on heels.  Dr. Rush's diagnostic impression noted that Plaintiff's left knee range of motion was good, her gait was grossly normal, and her right knee range of motion was normal.  AR 840.  Based on his examination findings, Dr. Rush opined that Plaintiff could walk and stand for four hours and sit without restriction, she could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently, could occasionally bend, but could never kneel on the left with no stooping, crawling or crouching.  She also should not walk on uneven terrain.  AR 841.

Finally, Dr. Schaffner's opinion that Plaintiff was not able to work is a determination reserved to the Commissioner.  Opinions on issues reserved to the Commissioner, such as a statement that a claimant is disabled or unable to work, are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d).

For these reasons, the Court finds that the ALJ did not err in evaluating the opinion evidence from Plaintiff's treating physician, Dr. Schaffner.

**B.  The ALJ Properly Evaluated Opinion Evidence from Dr. Rush.**

Plaintiff next argues that the ALJ erred by partially rejecting the opinion of Dr. Rush.  As detailed above, Dr. Rush completed an independent physical examination in October 2017.  On examination, Dr. Rush found that Plaintiff's extremities showed no clubbing, cyanosis, or edema and her knee joints showed normal range of motion bilaterally.  AR 839-40.  She had no joint deformities, crepitus, effusion, tender or trigger points.  AR 840.  Her motor strength was 5/5 in the upper extremities and 3/5 in the lower extremities.  She was able to walk without difficulties and she also was able to walk on toes and on heels.  Her Romberg was normal.  Dr. Rush's diagnostic impression was that, despite left knee instability, Plaintiff's left knee range of motion was good, her gait was

grossly normal.  He also found that Plaintiff's right knee range of motion was normal.  AR 840.  Based on his examination findings, Dr. Rush opined that Plaintiff could walk and stand for four hours with rest periods and sit without restriction. She could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently.  She could occasionally bend, but never kneel on the left, with no stooping, crawling or crouching.  She also should not walk on uneven terrain.  AR 841.

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31.  The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician.  *Id.* at 831.

Here, because Dr. Rush's opinion was contradicted by other opinions in the record, including Dr. Schaffner's opinion, the ALJ was required to provide specific and legitimate reasons to discount it. In evaluating Dr. Rush's opinion, the ALJ reasoned as follows:

> The undersigned gives partial weight to the Dr. Rush's opinions to the extent they are consistent with the residual functional capacity because they are mostly consistent with the objective medical record.  As mentioned above, give[n] the claimant's degenerative changes, Dr. Rush's reduced range of light work assessment overestimates the claimant's abilities (1F/5 and 9F/1).  Further, although Dr. Rush opined the claimant was limited to no stooping, crawling, or crouching, these limitations underestimate the claimant's abilities.  Dr. Rush opined the claimant cannot kneel on the left side (8F/8).  Finally, he assessed the claimant's motor strength to be 5/5 in the upper extremities and 3/5 in the lower extremities.  The undersigned give partial weight to Dr. Rush's opinions to the extent they are consistent with the objective record.  As discussed above, the claimant exhibited 5/5 strength throughout the upper and lower extremities in October 2015 (7F/8).  Nonetheless, in addition to having examined the claimant and providing a detailed report, Dr. Rush's opinions are more recent and demonstrative of the claimant's current functional abilities.  For these reasons, the undersigned give partial weight to Dr. Rush's opinions.

AR 25.

Having considered the record, the Court finds that the ALJ did not commit reversible error in assigning partial weight to Dr. Rush's opinion.  Although Plaintiff contends that it is unclear from the ALJ's decision what part of Dr. Rush's opinion that he was rejecting, it is evident that the ALJ rejected Dr. Rush's opinion that Plaintiff could not stoop, crawl, or crouch and that she could not kneel

on the left side.  AR 25.  The ALJ discounted this portion of Dr. Rush's opinion by citing objective evidence in the medical record that undermined these limitations.  An ALJ may reject the opinion of the examining physician where the limitations imposed are inconsistent with objective evidence in the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding that ALJ provided specific and legitimate reason for discounting physician's opinion where opinion was inconsistent with medical records); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings).  Here, the ALJ cited evidence from Dr. Rios' October 2015 consultative examination demonstrating that, contrary to Dr. Rush's opinion, Plaintiff had 5/5 strength in both her upper and lower extremities, with only a slight reduction in the motor strength of her knee extensors and flexors at 4+/5.  AR 25, 831.  Additionally, the ALJ's decision to assign partial weight to Dr. Rush's opinion is bolstered by Dr. Rush's own findings on examination, which included findings that Plaintiff had normal range of motion in her knee joints, no difficulty walking, no crepitus, effusion, or tenderness, no clubbing cyanosis or edema of her extremities.  AR 839-40.  She also did not require any assistive device and was able to move without assistance.  AR 838, 840.

Even if the ALJ erred by rejecting Dr. Rush's limitations to no stooping, crawling, crouching or kneeling on the left knee, any such error is harmless because the ALJ found that Plaintiff could perform the food checker position, which requires no stooping, crawling, crouching or kneeling.  AR 27; *see Dictionary of Occupational Titles* (DICOT) 211.482-014, 1991 WL 671856.  "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### C. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ erred by failing to offer specific, clear and convincing reasons for discrediting Plaintiff's subjective complaints.  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If

the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 23. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ considered that Plaintiff's statements were not entirely consistent with the medical record. AR 23. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ considered record evidence that undermined Plaintiff's complaints of totally disabling symptoms. For instance, the ALJ determined that Plaintiff's complaints of constant, sharp, shooting pain were undermined by findings of 5/5 strength in her upper and lower extremities in October 2015.[4] AR 23, 831. Additionally, the ALJ considered that an October 2012 examination revealed full range of motion to all extremities and strength of 5/5 in upper and lower extremities. AR 22,771. In August 2014, x-rays of Plaintiff's left knee were unremarkable, and she had no joint effusions, bony erosions, subluxations, or other abnormalities. AR 22, 452. In October 2015, Dr. Rios found only fine crepitus and tenderness of the medial and lateral compartment of the left knee, but Plaintiff had no laxity of the joint. AR 22, 831. In October 2017, Plaintiff was noted to have normal range of motion in her knee joints and she was able to walk without difficulties. AR 23, 840. The ALJ also noted that despite Dr. Schaffner's 2018 opinion that Plaintiff was unable to work until knee surgeries were performed, there were no other

---

[4]     The ALJ incorrectly stated that the October 2017 examination showed 5/5 strength in her upper extremities. AR 23. This misstatement does not detract from other evidence cited in the record, and the Court has addressed the error in connection with the ALJ's evaluation of the medical opinion evidence.

mentions in the entire record of any inability to work absent such surgeries.  AR 23.  Further, an examination only a few months prior revealed full range of motion in all joints.  AR 23, 840.

Second, the ALJ considered Plaintiff's activities of daily living, including her reported ability to shower, do laundry, cook, clean, dress herself, and grocery shop once or twice a week.  AR 22, 23. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina*, 674 F.3d at 1112– 13 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). The ALJ reasonably determined that Plaintiff's ability to cook, clean, dress herself, shower, spend time on electronic devices for half the day and shop once or twice a week were inconsistent with claims of totally debilitating physical impairments.

Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina,* 674 F.3d at 1113.  Moreover, the ALJ acknowledged that Plaintiff's medical record demonstrated that she had some workplace limitations based on her testimony that she elevates her feet throughout the day and uses a cane.  AR 21-22, 23.  The ALJ accounted for those limitations in the RFC, which included the need to use a cane for all ambulation and standing and the need to elevate her feet on and off for 15 minutes.  AR 21.

The Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error.

### D.  The ALJ Did Not Err at Step Two of the Sequential Evaluation

Plaintiff contends that the ALJ erred when finding Plaintiff did not have a severe mental impairment at step two of the sequential evaluation.  (Doc. No. 19 at 27.)  Plaintiff further contends that the ALJ had a duty to develop the record by ordering a psychiatric examination.  (*Id.* at 28.)

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 416.920(c). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a). The evaluation at step two is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yukert*, 482 U.S. 137, 153–154

(1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). An impairment is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual['s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citations omitted).  In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).  The burden is on the claimant to demonstrate a severe impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ considered Plaintiff's depression and anxiety at step two and found no more than mild limitations in any of the four broad areas of mental functioning set out in the disability regulations.  AR 18-20.  The ALJ expressly considered Plaintiff's treatment notes and mental status examinations, along with Plaintiff's own statements and testimony regarding her functional abilities. AR 18-19.

Additionally, the ALJ appropriately reasoned that Plaintiff's anxiety and depression were not severe based on relatively normal findings and lack of supporting objective evidence.  AR 19-20. *Verduzco v. Comm'r of Soc. Sec.*, 2013 WL 4854420, at *12 (E.D. Cal. Sept. 10, 2013) (ALJ properly found claimant's examinations were unremarkable and did not support a severe condition); *see also Stoffan v. Berryhill,* No. 1:16-CV-01654-SKO, 2018 WL 1335392, at *10 (E.D. Cal. Mar. 15, 2018) (non-severity determination at step two supported by objective evidence in the record); *Braeger v. Astrue*, No. 1:11-cv-01931-JLT, 2012 WL 4985103, at * 8 (E.D. Cal. Oct. 17, 2012) (citing objective medical evidence in the record as supporting ALJ's finding of non-severity). The ALJ determined that Plaintiff's mental status, neurological and psychiatric examinations were generally unremarkable.  AR 464 ("Alert and oriented x4"), 63 (oriented, cooperative), 662 ("alert & oriented X 3"), 701 ("alert & oriented x 3, good hygiene, good eye contact, cooperative with exam"), 703 ("alert & oriented x3, good hygiene, well groomed and well dressed, speech with normal rate and tone, good eye contract,

cooperative with exam"), 757 ("alert and oriented"), 764 ("alert & oriented X 3"), 769 ("alert & oriented x 3, good hygiene, good eye contact, cooperative with exam").  Despite noting occasional reports in the treatment records of anxiety and depression (*see, e.g.*, AR 840, 873, 874), the ALJ considered that Plaintiff had not undergone a mental health assessment or mental health treatment.  AR 20, 71.  The ALJ also considered opinion evidence from the state agency psychological consultants who found that Plaintiff had no medically determinable mental impairment.  AR 20, 89, 103, 116-17, 129-30.

As part of her contention that the ALJ erred in his step two analysis, Plaintiff argues that the ALJ failed to adequately develop the record by not obtaining a consultative psychiatric evaluation to establish the severity of Plaintiff's mental impairments. (Doc. No. 19 at 27-28.)  This argument is not persuasive.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's duty to "develop the record further" is triggered only where evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Id.*at 459-60; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff contends that, because there was evidence that she suffered from a mental impairment in the record, the ALJ should have obtained a consultative psychiatric evaluation to establish the severity of Plaintiff's mental impairments. (Doc. No. 19 at 28.)  However, the burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records).  Plaintiff has not demonstrated

1  that the record was ambiguous or inadequate to allow for proper evaluation.  The record contained the

2  opinion of the state agency physicians and there is no indication that the treatment records were

3  incomplete.

4      **E.  The ALJ Did Not Err in Evaluating the Lay Testimony.**

5      As a final matter, Plaintiff argues that the ALJ improperly rejected the lay witness testimony

6  from Plaintiff's sister, Doreen Blanchard.   (Doc. No. 19 at 28.)

7      Ms. Blanchard completed a third-party function report on September 11, 2015.  She reported

8  that she sees Plaintiff 8-10 hours per week.  They spend more time together when Plaintiff has a

9  doctor's appointment. Ms. Blanchard described Plaintiff's daily activities to include making breakfast,

10  making her bed, folding laundry while watching TV, and visiting with family or friends.  Plaintiff also

11  occasionally cared for her grandchildren.  Ms. Blanchard reported that Plaintiff's condition affected

12  her sleep because of pain.  However, Plaintiff had no problem with her personal care, did not need

13  reminders to take care of personal needs or grooming, and did not need help or reminders to take

14  medication.  Plaintiff could prepare her own meals, keep up on cleaning and laundry, but nothing

15  outdoors, drive short stretches, shop for groceries 3 times per month, and spend time with family and

16  friends.  Plaintiff could count change and handle money.  Ms. Blanchard opined that Plaintiff's

17  condition affected her ability to lift, squat, bend, stand, walk, sit, kneel, stair climb and follow

18  instructions.  Plaintiff could follow written and spoken instructions and finish what she started.  AR

19  328-35.  Ms. Blanchard also provided a narrative report regarding Plaintiff's condition.  AR 336-37.

20      An ALJ must take into account competent lay witness testimony. *Molina*, 674 F.3d at 1114;

21  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness

22  testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114

23  (citation omitted).  An ALJ is not required to discuss every witness' testimony on an individualized,

24  witness-by-witness basis. *Id*.  Rather, "if the ALJ gives germane reasons for rejecting testimony by

25  one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different

26  witness." *Id*.

27  ///

28  ///

19

1    The ALJ considered Ms. Blanchard's third-party report and assigned it "little weight" because

2    it was "a lay opinion based on casual observation, rather than objective medical examination and

3    testing."  AR 25.  The ALJ also found that the statement did "not outweigh the accumulated medical

4    evidence regarding the extent to which the claimant's impairments limit[ed] her functional activities."

5    AR 25-26.

6    Ms. Blanchard's status as a lay witness is not a valid reason to discount her observations.

7    *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *see also Smolen*, 80 F.3d at 1289 (finding

8    that "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her

9    testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of

10   particular value.").  Lay witnesses are not required to have medical training and their testimony need

11   not be backed by any particular expertise.  *Molina*, 674 F.3d at 1114 ("Lay testimony as to a

12   claimant's symptoms or how an impairment affects the claimant's ability to work is competent

13   evidence that the ALJ must take into account.").  Nevertheless, because the third-party statement of

14   Ms. Blanchard was of the same general nature as Plaintiff's subjective complaints, the ALJ's valid

15   reasons for discounting Plaintiff's statements, discussed above, apply equally to Ms. Blanchard's

16   similar statements.  *Molina*, 674 F.3d at 1122 ("given that the lay witness testimony described the same

17   limitations as Molina's own testimony, ... the ALJ's reasons for rejecting Molina's testimony apply

18   with equal force to the lay testimony"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694

19   (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for

20   rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to

21   such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

22   Accordingly, the Court finds that the ALJ did not commit reversible error in his evaluation of the lay

23   witness testimony.

## **CONCLUSION**

25   Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

26   evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

27   **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

28

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Sharon Ann Wright.

IT IS SO ORDERED.

Dated:   **November 23, 2020**                    /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE